UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INS. CO. <br> and <br> BOAT AMERICA CORPORATION, <br>    Plaintiffs, <br> <br> v. <br> <br> JOHN JABLONOWSKI, <br>    Defendant. | : <br> : <br> : <br> : <br> :    3:16-cv-02031-WWE <br> : <br> : <br> : <br> : <br> : |

## MEMORANDUM OF DECISION
## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This is an action by National Liability & Fire Insurance Co. and Boat America Corporation for declaratory judgment that there is no coverage for either of the insurance claims submitted by defendant John Jablonowski under his Yacht Policy.

Plaintiffs have moved for summary judgment. For the following reasons, plaintiffs' motion will be granted.

### BACKGROUND

Plaintiffs National Liability & Fire Insurance Co. and Boat America Corporation d/b/a Boat Owners Association of the United States issued Yacht Policy No. 3641097-15 to defendant John Jablonowski for his 1962 wooden auxiliary sailboat, PAULA LYNN, with an agreed $90,000 value covering the boat and boating equipment during the period September 18, 2015, to September 18, 2016.

On June 20, 2016, defendant reported Claim No. 1604168 under the Yacht Policy for an alleged electrical fire at the PAULA LYNN shore power cord connection, which cut off electricity to an onboard space heater. This allegedly caused immediate consequential property damage in the

1

form of mold or mildew growth in the boat's interior, for which defendant claims he is due $90,000, with the boat allegedly a total loss.

On September 23, 2016, plaintiffs declined coverage for defendant's first claim and without waiving any rights agreed to pay a $3,000 invoice for cleaning mold and mildew, as an investigative cost.

Three days after that declination (and eight days after the Yacht Policy expired), on September 26, 2016, defendant reported Claim No. 1607652 for alleged vandalism due to an unknown person's sanding of PAULA LYNN's cabin top and V-berth. Defendant claims the vandal's sanding spread mold throughout the boat. Again defendant claims he is due $90,000 because the boat is a constructive total loss.

Without waiving any rights, plaintiffs agreed to consider the new, second claim and to reconsider the first claim in light of defendant's continued allegations.

In accordance with the Yacht Policy at its page 2 ¶ 5, defendant agreed to a pre-litigation examination under oath taken by counsel on October 21, 2016.

By letter dated December 8, 2016, plaintiffs denied defendant's first and second claims and then filed an Amended Complaint for declaratory judgment on December 13, 2016.

Regarding his first claim, for the alleged fire, defendant admits that he never saw any smoke but contends that the fire at the electrical cord connection continued and was ongoing all winter until May 2016.

Defendant did not disclose any expert witnesses regarding the existence of a fire. After looking at the PAULA LYNN shore power cord, the Watertown Fire Chief and the Mystic Fire Marshal, according to defendant, both said, "It was an electrical issue and it caused the burning of the cord, arcing."

Plaintiffs timely disclosed Michael K. Higgins Sr. as their expert fire witness in accordance with Fed. R. Civ. P. 26(a)(2). Defendant did not depose Higgins. In his November 30, 2016, report, Higgins concluded that there was no fire. The report supports plaintiffs' December 8, 2016, denial letter:

> The boat side connector of the shore power cord has carbonization and melting of the plastic housing which is a direct result of a poor contact and arcing with the male hot lead on the boat connector. No fire occurred on the connector or male plug. All damage is a direct result of poor maintenance on the insured's part.

Defendant admitted that he had to repeatedly reconnect the shore power cord in order to restore power to the space heater in the saloon.

Although defendant testified that he first inspected and saw physical damage on the shore power cord at the end of May or early June 2016, his wife and son testified damage to the shore power plug was first noticed in the winter of 2016.

Regarding defendant's second claim for vandalism, he admitted no knowledge that the unknown sander intended to cause harm to the boat rather than to clean the mold. Besides sanding, defendant alleges no other acts of vandalism.[1]

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp.,

---

[1] Defendant alleges that the mold spore damage was spread as a result of the sanding.

664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp.</u>, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. <u>Anderson</u>, 477 U.S. at 249.

> The Yacht Policy provides:
>
> We will pay for property damages to the insured boat, its engines and items listed in "What is Covered" from any accidental cause including theft or vandalism…. All coverages are subject to the limitations and exclusions of the policy.
>
> Exclusions
>
> This insurance does not cover: A. any loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, ice or freezing, galvanic action, rot, mold or mildew, corrosion, weathering, marring, scratching, denting, vermin, animals or marine life; however, we will cover immediate consequential property damage resulting from any fire, explosion, sinking, demasting, collision or stranding.

**Fire Claim**

Plaintiffs argue, based on their uncontroverted expert opinion, that there was no fire. Plaintiffs' expert, who has not been directly challenged by defendant, opines that pyrolysis but no ignition or combustion occurred. Moreover, plaintiffs characterize as implausible defendant's contention that a fire was ongoing within the power cord connection throughout the winter. Plaintiffs assert that because there was no fire, there can be no coverage under the Yacht Policy for "immediate consequential property damage resulting from fire," as the Policy excludes coverage for "any loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating."

4

Defendant responds that the mold damage was a result of fire damage to the shore power cord, which interrupted the operation of the heaters in the vessel's main cabin. Defendant asserts that the kind of "slow burn" that occurred in the power cord can constitute a fire for legal purposes. See In re Rhoten, 397 F. Supp. 2d 151, 161 (D. Mass. 2005). In Rhoten, although the trial court described the "long-duration burn" of the shore power cord as "[s]imilar to leaving a soldering iron plugged in," the fire in that case eventually engulfed and sank multiple vessels, so the court did not delineate the boundary between mere electrical arcing and actual fire. See id. at 153. In the instant case, it is accepted that the immediate damage from heat did not extend beyond the connection of the shore power cord. Rhoten does not help the court determine whether a fire occurred within the shore power cord connection in this case.

Plaintiff maintains that the existence of a fire is a material fact in dispute. In terms of evidence, plaintiff submits that "[t]here is obvious charring on the side of the boatside plugs, both male and female, which show that there was a fire." Indeed, when determining scope of coverage for loss or damage by fire, "the action of fire in charring, scorching, cracking, smoking or heating may be included though no flame be seen." Lavitt v. Hartford County Mut. Fire Ins. Co., 105 Conn. 729, 136 A. 572, 574 (1927). Nevertheless, there must exist in the first place a fire, which is the effect of combustion, and is equivalent to ignition or burning. See id; see also Spare v. Glens Falls Ins. Co. 137 Conn. 105, 110 (1950) ("the results of smoke and heat, where there is no ignition outside the agencies employed, are not covered by the policy, nor is damage by any degree of heat alone without flame or glow covered."). Although the Supreme Court of Connecticut in Spare focused on the issue of a "friendly fire," that is, one intentionally built, discussion of the flame or glow requirement aligns with consensus across jurisdictions. "Fire, then, as used in an insurance policy, implies accidental combustion accompanied by visible flame or glow." Edwin H. Abbot Jr.,

5

*The Meaning of Fire in an Insurance Policy Against Loss or Damage by Fire*, 24 Harv. L. Rev. 119, 124 (1910) (citing cases).

Here, defendant did not witness and has no evidence of flame or glow. Moreover, plaintiffs' expert report concludes that there was no combustion.

> Electrical arcing can generate temperatures greater than 2000 degrees F. at the point of the arcing. In this case the overall temperature of the contacts never got hot enough to ignite the nylon housing of the plug but did heat it enough to pyrolyze the nylon around the contacts. This effectively was a pre-ignition state that **never evolved to the point of combustion**. The nylon in these plugs contain flame retardants to prevent them from burning at lower temperatures. The nylon in this plug never reached a temperature where it would overcome the retardant and burn.

Higgins' Report p. 2 [ECF No. 1 Ex. 2].[2]

An insurer's status as plaintiff in a declaratory judgment action does not shift the burden of proof away from the insured. See Preferred Acc. Ins. Co. of N.Y. v. Grasso, 186 F.2d 987, 991 (2d Cir. 1951); see also Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 198-203 (2014) (holding that the operation of the Declaratory Judgment Act does not change underlying substantive aspects of a claim, including the burden of proof). At bench trial, defendant will not be able to prove that a fire occurred. Accordingly, summary judgment will be granted in favor of plaintiffs with respect to defendant's fire claim.

**Vandalism Claim**

Plaintiffs argue that the mere sanding of the interior cabin does not amount to vandalism, as there is no evidence of willful or malicious destruction.

---

[2] Higgins (plaintiffs' expert) is a member of NFPA (National Fire Protection Association), ASTM (American Society for testing and Materials), IAMI (International Association of Marine Investigators), IAATI (International Assoc. of Auto Theft Investigators), E-30 Forensic Science Committee for the ASTM. He has been involved in the investigation of several thousand fires involving buildings, boats, trucks, and cars. He has qualified in court as an expert more than two hundred times.

This Court has addressed the definition of vandalism:

> Because vandalism is not defined by the policy, under the Connecticut rules of construction, it must be given its plain, ordinary meaning. *See, e.g., Schultz,* 213 Conn. at 702, 569 A.2d 1131. The Connecticut Supreme Court has long looked to Webster's Third International Dictionary (1986) for guidance when determining the "usual and ordinary" meaning of contract language. Webster's defines "vandalism" as the "[w]illful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New International Dictionary 2532 (1986); *accord* The American Heritage Dictionary of the English Language 1973 (3d ed.1992).

Costabile v. Metropolitan Property and Cas. Ins. Co., 193 F. Supp. 2d 465, 477 (D. Conn. 2002).

Here, defendant admits that the mystery sander may have been benevolent. Without any direct evidence of malicious intent, it is not reasonable to infer that a prospective vandal would choose to covertly sand the interior cabin as a means to cause harm to the vessel.

Indeed, at his examination under oath, defendant testified regarding the unknown sander as follows:

> Q: Do you have any reason to think that the person who came in and sanded with fine sandpaper – do you have any reason to think that person intended to cause damage to you?
>
> A: No. I don't think so.
>
> Q: You don't think they intended to cause property damage? Intended. They didn't mean to damage the boat; did they?
>
> A: I think that whoever did that wanted to make cleaning the mold as best that they can get it. That's what I think happened.
>
> Q: They wanted to improve it?
>
> A: That [sic] wanted to. I think they wanted to finish the job that they were hired to do, to clean the mold.

7

Plaintiffs contend that the mold or mildew exclusion further supports their denial of coverage.  While the mold and mildew exclusion includes exceptions for immediate consequential property damage resulting from fire, explosion, sinking, demasting, collision, and stranding, there is no such exception for vandalism.  Therefore, the "insurance does not cover . . . any loss caused directly or indirectly by . . . mold or mildew."  Accordingly, summary judgment will be granted in favor of plaintiffs with respect to defendant's vandalism claim.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED.  The Clerk is instructed to close this case.

Dated this 26th day of September, 2018, at Bridgeport, Connecticut.

                         /s/Warren W. Eginton
                         WARREN W. EGINTON
                         SENIOR UNITED STATES DISTRICT JUDGE